**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>NYREE BELTON,<br><br>       Debtor, | Chapter 7<br><br><br><br>Case No. 12-23037 (RDD) |
| NYREE BELTON,<br><br>   Debtor and Plaintiff<br>   on behalf of herself<br>   and all others similarly<br>   situated,<br><br>  v.<br><br>GE CAPITAL CONSUMER LENDING, INC.,<br>A/K/A GE MONEY BANK<br><br>     Defendant. | Case No. 21-cv-09492 (CM)<br>Adv. No. 14-08223 (RDD) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**<u>ATTORNEYS' FEES, EXPENSES, AND AN INCENTIVE AWARD PAYMENT</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND....................................................... 4

I.     The Terms of the Proposed Settlement................................................................. 7

ARGUMENT ....................................................................................................................... 9

I.     The Requested Attorneys' Fees Are Reasonable and Appropriate..................... 9

      A.     The Proposed Award to Class Counsel is Reasonable and Appropriate
             Under Both the Percentage and Lodestar Methods................................ 11

      B.     The Proposed Award to Class Counsel is Reasonable Under the *Goldberger*
             Criteria ....................................................................................................... 16

            1.     The Time and Labor Expended By Class Counsel ..................... 16

            2.     The Risks of the Litigation ........................................................... 17

            3.     The Magnitude and Complexity of the Litigation .................... 19

            4.     The Requested Fee in Relation to the Settlement ..................... 19

            5.     The Quality of the Representation ............................................... 20

            6.     Public Policy Considerations ....................................................... 21

II.    Class Counsel's Expenses Are Reasonable and Appropriate ............................ 21

III.   The Proposed Incentive Award to the Class Representative is Reasonable and
      Appropriate .......................................................................................................... 22

CONCLUSION................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*Anderson v. Capital One Bank (USA), N.A.* (*In re Anderson*),
    No. 7:19-cv-03981-NSR (S.D.N.Y.) .................................................................... 2, 3

*Anderson v. Credit One Bank, N.A.* (*In re Anderson*),
    884 F.3d 382 (2d Cir. 2018) ................................................................................. 5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
    522 F.3d 182 (2d Cir. 2008) ............................................................................ 13, 15

*Banyai v. Mazur*,
    2007 WL 927583 (S.D.N.Y. Mar. 27, 2007)....................................................... 18

*Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*),
    Adv. Pro. No. 14-08223 (RDD) (Bankr. S.D.N.Y.) ......................................*passim*

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................ 10

*Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco Managed Care,*
    *L.L.C.*,
    504 F.3d 229 (2d Cir. 2007) ............................................................................... 12

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................................... 17

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 12

*Dornberger v. Metropolitan Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ........................................................................ 23

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ................................................................ 19

*Echevarria v. Bank of America Corp., et al.* (*In re Echevarria*),
    No. 7:17-cv-08026-VB (S.D.N.Y.) ................................................................... 2, 3

*Edmonds v. United States*,
    658 F. Supp. 1126 (D. S.C. 1987) ...................................................................... 20

*Elliot v. Leatherstocking Corp.*,
  2012 WL 6024572 (N.D.N.Y. Dec. 4, 2012) ........................................................... 22

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ................................................... 12, 14

*GE Capital Retail Bank v. Belton*,
  141 S. Ct. 1513 (2021) ............................................................................................ 5

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................ *passim*

*Haynes v. Chase Bank USA, N.A.* (*In re Haynes*),
  No. 18-cv-03307-VB (S.D.N.Y.) ....................................................................... 2, 3

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
  2006 WL 3378705 (S.D.N.Y. Nov. 16, 2009), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) ......... 14

*In re Arakis Energy Corp. Sec. Litig.*,
  2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ........................................................ 22

*In re Belton*,
  No. 12-23037 (RDD) (Bankr. S.D.N.Y.) ................................................................. 4

*In re Belton*,
  2019 WL 1017293 (S.D.N.Y. Mar. 4, 2019) ........................................................... 5

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y. July 16, 2007) .................................................... 10, 14

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................................... 14

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
  2001 WL 709262 (S.D.N.Y. June 22, 2001) ......................................................... 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ......................................................... 21

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 18

*In re Hi–Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ....................................................... 12

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ..................................................... 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................... 16, 18, 20

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 20

*In re Med. X-Ray Film Antitrust Litig.*,
  1998 WL 661515 (E.D.N.Y. Aug. 7, 1998) ............................................................ 18

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................... 13, 14

*In re Polaroid ERISA Litig.*,
  2007 WL 2116398 (S.D.N.Y. July 19, 2007) ......................................................... 23

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) ........................................................................ 13

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
  724 F. Supp. 160 (S.D.N.Y. 1989) ........................................................................ 13

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) ................................................................... 22

*In re Vitamins Antitrust Litig.*,
  2001 U.S. Dist. LEXIS 25067 (D. D.C. July 16, 2001) ........................................ 22

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005) ....................................................... 10, 11, 21

*Johnson v. City of New York*,
  2010 WL 5818290 (E.D.N.Y. Dec. 13, 2010) ....................................................... 11

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
  487 F.2d 161 (3d Cir. 1973) .................................................................................. 13

*Malchman v. Davis*,
  761 F.2d 893 (2d Cir. 1985) .................................................................................. 15

*Maley v. Del. Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................... 21

*McDaniel v. Cty. of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ........................................................................ 11

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ..................................................................................... 13

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) .......................................................... 14

*Olsen v. County of Nassau*,
   2010 WL 376642 (E.D.N.Y. Jan. 26, 2010) ................................................ 15

*Savoie v. Merchs. Bank*,
   166 F.3d 456 (2d Cir. 1999) ........................................................................ 10

*Simmons v. NY. City Transit Auth.*,
   575 F.3d 170 (2d Cir. 2009) ........................................................................ 15

*Themis Capital v. Democratic Republic of Congo*,
   2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ............................................... 16

*Viafara v. MCIZ Corp.*,
   2014 WL 1777438 (S.D.N.Y. May 1, 2014) ................................................. 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................... 10, 14

*Willix v. Healthfirst, Inc.*,
   2011 WL 754862 (E.D.N.Y Feb. 18, 2011) .................................................. 17

*Zeltser v. Merrill Lynch & Co., Inc.*,
   2014 WL 4816134 (S.D.N.Y. Sept. 23, 2014) .............................................. 18

Statutes

11 U.S.C. § 524 ................................................................................................. 1, 4

Rules

Fed. R. Civ. P. 23 ................................................................................................. 14

Fed. R. Civ. P. 23(e) ............................................................................................. 4

## PRELIMINARY STATEMENT

Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP (collectively, "Class Counsel") seek an award of $2,000,000 in attorneys' fees and expenses reasonably incurred in connection with an agreement reached with GE Capital Retail Bank, f/k/a GE Money Bank and n/k/a Synchrony Bank ("GECRB" or "Defendant"), to settle the above-captioned action (the "Settlement"). The Bankruptcy Court preliminarily approved the Settlement by order dated October 28, 2021. Class Counsel's efforts in connection with the Settlement conferred substantial benefits on the Settlement Class[1] warranting an award of the reasonable fees and expenses sought herein. Plaintiff requests an award of fees that represents 34.9% of the monetary value of the Settlement based on the number of claims submitted to date and less than 33% of the total value of the Settlement, as well as just over one time Class Counsel's lodestar (1.01%).

In this class action, Plaintiff has alleged that Defendant violated the discharge injunction found in Section 524 of the Bankruptcy Code by refusing, as a policy, to update the credit furnishing on certain consumer debts that were sold to third parties to reflect that those debts were discharged in bankruptcy after such sales. Defendant denies the allegations in the Complaint and Amended Complaint and denies that its conduct violated the discharge injunction. Following significant proceedings in the case, Class Counsel negotiated the Settlement Agreement with Defendant's counsel.[2] If approved, the Settlement would resolve the claims against Defendant in this action.

---

[1] By separate motion filed contemporaneously herewith, Plaintiff seeks final approval of the Settlement preliminarily approved by the Bankruptcy Court on October 28, 2021.

[2] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Settlement Agreement.

Pursuant to the Settlement Agreement, as described further below, Defendant has agreed to pay up to $8.445 million, subject to Court approval.  Based on its records, GECRB has identified over six hundred thousand Class Members.  Under the terms of the Settlement, those Class Members who submitted payments to GECRB on an Affected Account post-discharge and have not been compensated fully for those payments may submit a claim for reimbursement.  The remaining settlement monies will be distributed to the Class on a claims-made basis.  Class Members who submit a distribution claim shall receive a *pro rata* portion of the settlement up to a maximum of $175 per claim.  Based on the number of claims submitted to date, it is estimated that the distribution claim payments will be the maximum amount allowed under the Settlement Agreement, $175 per claim.[3]  Following the payment of these claims, as well as payment of automatic reimbursements, Administrative Costs, and court-approved Attorneys' Fees and Expenses and Incentive Award, the remaining funds will revert to Defendant.

Thus, the distribution payments in this action will be comparable to those in three other substantively identical actions recently settled in this district, *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), No. 18-cv-03307-VB (S.D.N.Y.) (Briccetti, J.), *Echevarria v. Bank of America Corp., et al.* (*In re Echevarria*), No. 7:17-cv-08026-VB (S.D.N.Y.) (Briccetti, J.), and *Anderson v. Capital One Bank (USA), N.A.* (*In re Anderson*), No. 7:19-cv-03981-NSR (S.D.N.Y.) (Roman, J.).

As a part of the Settlement Agreement, GECRB also represents and warrants that since March 31, 2015, it has asked the Credit Reporting Agencies to update or delete Tradelines of sold debt, including for the Affected Accounts it had identified at that time, and has confirmed that these deletions have been regularly occurring.  GECRB further represents and warrants that, absent

---

[3] The Claim Deadline is January 28, 2022.  *See* Declaration of Sydney Gustafson of BrownGreer PLC ("Gustafson Decl.") at ¶ 18.

specified exceptions (*e.g.*, a Class Member's request), it will not request that the Credit Reporting Agencies reinstate those Tradelines.  In addition, GECRB represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any government regulator, during the period set forth in the Agreement GECRB will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the GECRB Tradeline for that account after information about the sale is furnished.

As such, the Settlement offers substantial relief to the Settlement Class, as well as future consumers, while also taking into account the substantial risks inherent in proceeding with litigation of this nature.

In addition, this Settlement is comparable to the settlements this district court recently approved in *Haynes*, Dkt. No. 19, *Echevarria*, Dkt. No. 23, and *Anderson*, Dkt. No. 19.  In *Haynes*, where there were over one million class members, Chase agreed to fund an $11.5 million settlement fund and pay Class Counsel up to $3.75 million in fees and expenses.  *Haynes*, Dkt. No. 9-1.  In *Echevarria*, where there were over 400,000 class members, Bank of America agreed to fund a $5.5 million settlement fund and pay Class Counsel up to $1 million in fees and expenses. *Echevarria*, Dkt. No. 12-1.  Class Counsel exercised the right to seek approval for up to an additional $500,000 in fees and expenses, to be paid from the settlement fund.  *Id*. at Dkt. No. 14-16.  In *Anderson*, where there were close to 700,000 class members, Capital One agreed to fund a $10.5 million settlement fund, which included $3.5 million in fees and expenses for Class Counsel. *Anderson*, Dkt. No. 11-1.  Chase, Bank of America, and Capital One also agreed to substantially identical representations and warranties to those GECRB agrees to here.  *Haynes*, Dkt. No. 9-1; *Echevarria*, Dkt. No. 12-1; *Anderson*, Dkt. No. 11-1.

Class Counsel took this case on a contingency fee basis with no guarantee of success and have received no payments for the considerable time and money they have expended in the over seven years that this litigation has been pending. For all of these reasons, Class Counsel respectfully request an award of the fees and expenses detailed in this application. *See* Fed. R. Civ. P. 23(e).

## FACTUAL AND PROCEDURAL BACKGROUND

In the Amended Complaint, Plaintiff alleges that GECRB attempts to collect Chapter 7 discharged consumer debts by refusing, as a policy, to update its credit furnishing to reflect that the debts were discharged in Chapter 7 bankruptcy. Plaintiff alleges that GECRB's failure to update its credit furnishing to reflect Chapter 7 bankruptcy discharges pressures consumers to repay discharged debt in order to have the negative information removed from their credit reports. Am. Compl. ¶ 12. Plaintiff alleges that GECRB's systematic refusal to update its credit furnishing violates the discharge injunction set forth in § 524 of the Bankruptcy Code. GECRB denies these allegations and denies that its conduct violated the discharge injunction. The Settlement Agreement that Plaintiff now submits for final approval provides excellent relief to the Settlement Class concerning these claims, following years of vigorously contested litigation.

On May 31, 2012, Plaintiff Nyree Belton filed for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. *In re Belton*, No. 12-23037 (RDD), Dkt. No. 1. The Bankruptcy Court entered a discharge order on September 11, 2012. Dkt. No. 7. On or about February 28, 2014, Ms. Belton moved to reopen her bankruptcy for the purpose of challenging GECRB's conduct, and the Bankruptcy Court granted her motion on April 11, 2014. Dkt. No. 9.

On April 30, 2014, Plaintiff Nyree Belton, individually and on behalf of all others similarly situated, commenced this action by filing a complaint against GECRB (the "Complaint"). *Belton v. GE Capital Consumer Lending, Inc.* (*In re Belton*), Adv. Pro. No. 14-08223 (RDD), Dkt. No. 1. This case is one of several related class actions filed in the United States Bankruptcy Court for the Southern District of New York against different defendant banks who are alleged to have engaged in substantively identical conduct in violation of the discharge injunction.  Following the filing of the Complaint, the parties engaged in extensive motion practice.

On July 8, 2014, GECRB filed a motion to dismiss the Complaint.  Adv. Pro. No. 14-08223, Dkt. Nos. 13, 14.  On September 15, 2014, Plaintiff moved to amend the Complaint (Dkt. Nos. 37-39), and Court subsequently directed the parties to brief the viability of the Proposed Amended Complaint.  On October 21, 2014, GECRB did so, moving to dismiss the Proposed Amended Complaint or in the alternative strike the class allegations.  Dkt. No. 55.

The parties then engaged in extensive motion practice and appeals related to substantive issues in the case, including with respect to whether the case could proceed in Bankruptcy Court or the parties should be compelled to arbitrate.  On July 8, 2014, GECRB filed a motion to compel arbitration.  Dkt. Nos. 13, 14.  Following full briefing and oral argument, the Bankruptcy Court denied the motion to compel arbitration on November 10, 2014.  Dkt. No. 79.  On October 14, 2015, the District Court reversed the Court's decision and ordered the case to arbitration.  *In re Belton*, Nos. 15 CV 1934, 15 CV 3311.  On March 17, 2016, Plaintiff sought mandamus relief from the Second Circuit seeking to overturn the District Court's decision.  The Second Circuit ultimately directed Plaintiff to seek relief in the District Court following its decision in *In re Anderson*, 884 F.3d 382 (2d Cir. 2018).  On March 4, 2019, the District Court reconsidered and reversed its decision compelling arbitration.  *In re Belton*, 15 CV 1934, 15 CV 3311, 2019 WL

5

1017293 (S.D.N.Y. Mar. 4, 2019).  The Second Circuit affirmed on June 16, 2020 (*In re Belton*, 961 F.3d 612 (2d Cir. 2020)) and the Supreme Court denied GECRB's petition for a writ of certiorari on March 8, 2021.  *GE Capital Retail Bank v. Belton*, 141 S. Ct. 1513 (2021).

Following the resolution of these appeals, on April 19, 2021, Plaintiff filed the Amended Complaint, which Plaintiff had previously proposed on September 15, 2014.  Adv. Pro. No. 14-08223, Dkt. Nos. 37-39; 131.  On May 10, 2021, GECRB filed a supplemental memorandum in support of its motion to dismiss the Amended Complaint (Dkt. No. 132), but prior to a hearing or decision on the motion, the Parties mediated the dispute and reached this Agreement.

Moreover, the parties engaged in serious and informed negotiations in an effort to reach an equitable resolution of the litigation.  The parties had numerous settlement discussions and mediated the dispute with an experienced and well-respected mediator from Pilgrim Mediation Group, Jonathan Lerner.  Those efforts were not successful, and the parties subsequently mediated this dispute with the assistance of the Honorable Robert Drain of the Bankruptcy Court, which led to the current settlement agreement.  Declaration of Adam R. Shaw in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and An Incentive Award Payment ("Shaw Decl.") at ¶ 5.

Based upon their discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, and after engaging in extensive arm's length negotiations, the parties reached agreement on the Settlement.  The Settlement Agreement both provides significant benefits to Class Members and takes into account the substantial risks inherent in proceeding with litigation of this nature.  Plaintiff had two objectives in filing this action—to remedy the alleged violation of the discharge injunction by having GECRB update its credit furnishing and to compensate putative Class Members who were harmed by GECRB's actions.  As described further below, the Settlement Agreement achieves both objectives and further safeguards the accuracy of

the credit reports of future consumers.  GECRB has addressed the credit furnishing with respect to Class Members' Affected Accounts and, under the terms of the Settlement, if GECRB sells debt, it has represented and warranted that it will address Tradelines related to those sales as set forth in the Settlement Agreement.  Moreover, the Settlement provides significant monetary relief to the Class, obligating GECRB to pay up to $8.455 million, subject to Court approval.

On October 5, 2021, Plaintiff moved for preliminary approval of the Settlement in the Bankruptcy Court.   Adv. Pro. No. 14-08223 (RDD), Dkt. No. 136.  On October 28, 2021, the Bankruptcy Court issued an order preliminarily approving the settlement and directing that notice be issued.  Dkt. No. 137.  In its preliminary approval order, the Bankruptcy Court also conditionally certified the Class, for settlement purposes only, and appointed Nyree Belton as Class Representative and the law firms Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP as Class Counsel.  *See id.*

On November 4, 2021, the parties jointly moved to withdraw the reference so that this Court could consider final approval of the settlement.  Dkt. No. 138.  On November 29, 2021, this Court set the final approval hearing for February 10, 2022.  No. 21-cv-9492, Dkt. No. 3.

I.       **The Terms of the Proposed Settlement.**

Under the Settlement Agreement, the Class is defined as the collective group of those individuals who maintained a GECRB Credit Card Account and whose debt related to that Credit Card Account was charged off and either: (i) sold to a Debt Buyer on or after January 1, 2008 through and including December 31, 2010 and who subsequently sought and obtained a discharge of the sold debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code, on or after January 1, 2008 through and including March 31, 2011; or (ii) sold to a Debt Buyer on or after January 1, 2011 through and including March 31, 2015 and who subsequently sought and

obtained a discharge of the sold debt as a result of his/her bankruptcy under Chapter 7 of the Bankruptcy Code, on or after January 1, 2011 through and including March 31, 2015.  Agreement, § 1.14.

The Settlement Agreement provides significant relief to the Class.  With respect to monetary relief, the Settlement Agreement provides that GECRB will fund a qualified Settlement Fund of $8.455 million.  From this Settlement Fund, those Settlement Class Members who made a payment or payments of a discharged debt to GECRB or to a Debt Buyer to whom a GECRB Affected Account was sold may seek reimbursement.[4]  Agreement, § 5.2.2.  In addition, Participating Claimants who submit a Qualifying Claim Form shall each receive a *pro rata* portion of the settlement up to a maximum of $175 per claim, as described more fully in the Agreement. *Id*. at §§ 5.2.3, 5.5.  The Class Representative may also apply to receive, subject to court approval, an Incentive Award of up to $10,000 from the Settlement Fund.  *Id*. at § 15.6.

In addition, as a direct result of the Action, GECRB has requested that the Credit Reporting Agencies update or delete the Tradelines associated with Class Members' Affected Accounts.  *Id*. at § 3.2.1.  GECRB further represents and warrants as a part of the Settlement that, absent specified exceptions (*e.g.*, a Class Member's request), GECRB will not ask the Credit Reporting Agencies to reinstate these Tradelines.  *Id*. at §§ 3.2.2-3.2.3.  GECRB also represents and warrants that, absent any change in federal or state law or contrary direction or expectation from any government regulator, during the period set forth in the Agreement, GECRB will request that the Credit Reporting Agencies update, delete or suppress the Tradelines for Affected Accounts as appropriate.

---

[4] Those GECRB Post-Discharge Payors that have been identified by GECRB will automatically receive payment from the Settlement Fund.  GECRB represents and warrants that the total of the payments made to GECRB by Post-Discharge Payors is $60,000 or less.  Agreement, § 5.1.

*Id*. at § 3.2.5.[5]  Thus, the Settlement addresses the core complaint of Plaintiff and the Class and provides important relief to them and to future consumers.

Under the Agreement, costs including those associated with Notice, Claims, and the administration of the Settlement shall be invoiced by the Settlement Administrator and paid from the Settlement Fund.   *Id.* at § 3.3.2.   The Settlement Administrator has now detailed the approximate cost to date to implement the Notice Plan and handle the administration of claims and Settlement Class Member support for this Settlement Program, which totals $411,224.00. Gustafson Decl. at ¶ 22.  In addition, under the Agreement, Class Counsel may seek approval from the District Court for an award of Attorneys' Fees and Expenses in the Action, which shall be paid from the Settlement Fund.  *Id.* at § 15.  Pursuant to the terms of the Agreement, Class Counsel now seeks an award of $2,000,000 in Fees and Expenses ($1,939,949.02 in Fees and $60,050.98 in Expenses), as well as an Incentive Award of $10,000 for the Class Representative.[6]

## ARGUMENT

**I.     The Requested Attorneys' Fees Are Reasonable and Appropriate.**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Accordingly, counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services.

---

[5] Section 3.2.6 in the Settlement Agreement addresses GECRB's obligations under the Agreement if federal or state law should change to require it to furnish information on such debt.  *Id*.

[6] Once the Settlement Administrator deducts from the Settlement Fund (i) payments to GECRB Post-Discharge Payors; (ii) payments to Class Members for qualifying reimbursement and distribution claims; (iii) Administrative Costs; (iv) any approved Incentive Award to the Class Representative; and (v) approved Attorneys' Fees and Expenses, any amount remaining shall revert to GECRB.  *Id*. at § 5.5.

Courts traditionally have used two methods to evaluate the reasonableness of fee requests in common fund cases: (1) the percentage method, which awards attorneys' fees as a percentage of the benefit created for the class; and (2) the lodestar approach, which involves multiplying the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience and then enhancing the resulting lodestar figure by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999). The Second Circuit has held that district courts may use either the percentage method or the lodestar method, although the trend has been in favor of the percentage method. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Bisys Sec. Litig.*, No. 04-cv-3840, 2007 WL 2049726, at \*2 (S.D.N.Y. July 16, 2007).[7] Even when not used as the primary means to determine an appropriate fee, "[t]he lodestar method remains highly useful . . . as a 'cross-check' to further ensure reasonableness." *In re Bisys*, 2007 WL 2049726 at \*2; *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).[8]

Regardless of whether a court applies the percentage method or the lodestar method, its ultimate task is to ensure that the fees awarded are "reasonable" under the circumstances.

---

[7] Additionally, "the percentage approach most closely approximates the manner in which private litigants compensate their attorneys in the marketplace contingency fee model." *In re Lloyd's Am. Trust Fund Litig.*, No. 96-cv-1262, 2002 WL 31663577, at \*26 (S.D.N.Y. Nov. 26, 2002).

[8] "Where the lodestar fee is used as 'a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.'" *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005)) (quoting *Goldberger*, 209 F.3d at 50).

*Goldberger*, 209 F.3d at 47.   The determination of "reasonableness" is within the Court's discretion.  *Id.*; *WorldCom*, 388 F. Supp. 2d at 355.  The Second Circuit has instructed that, in the exercise of such discretion:

> [D]istrict courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

*Goldberger*, 209 F.3d at 50 (citation omitted).

Moreover, the Second Circuit has recognized that "market rates, where available, are the ideal proxy for [Plaintiffs' Counsel's] compensation." *Id.* at 52.  Thus, the Court should "approximate the reasonable fee that a competitive market would bear." *Johnson v. City of New York*, No. 08-cv-3673, 2010 WL 5818290, at *4 (E.D.N.Y. Dec. 13, 2010) (citing *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 420, 422 (2d Cir. 2010)) (district court's focus should be "on mimicking a market").  For the reasons set forth below, Class Counsel submit that the requested award of fees and expenses is reasonable under both the percentage and lodestar methods, and when viewed in light of the *Goldberger* factors.

## A.   The Proposed Award to Class Counsel is Reasonable and Appropriate Under Both the Percentage and Lodestar Methods.

Class Counsel request an award of fees and expenses of $1,939,949.02 and $60,050.98, respectively, which totals $2 million and represents 34.9% of the monetary value of the Settlement based on the number of claims submitted to date.  This award is reasonable and comparable to those typically approved by courts both inside and outside of this district. *See, e.g., Central States S.E. and S.W. Areas Health and Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229 (2d Cir. 2007) (affirming 30% attorney's fee award of a $42.5 million settlement); *City of*

*Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM), 2014 WL 1883494, at *20 (S.D.N.Y. May 9, 2014) (approving 33% attorneys' fee award of $15 million settlement recovery); *In re Hi–Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557(CM), 2014 WL 7323417, at *14 (S.D.N.Y. Dec. 19, 2014) (approving 33.33% attorneys' fee award and collecting cases awarding the same).   In addition, when the value of the non-monetary relief is considered, the requested fee award becomes an even smaller percentage of the total recovery in this case, making it clear just how conservative Class Counsel's request is.   *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405, 14-cv-8714 (CM), 2015 WL 10847814, at *10 (S.D.N.Y. Sept. 9, 2015) ("The overall value of the settlement comprises monetary as well as non-monetary relief").

Indeed, in addition to obtaining monetary relief for Class Members, Class Counsel have also obtained a Settlement in which GECRB has represented and warranted that it has asked the Credit Reporting Agencies to update or delete Tradelines of sold debt and has confirmed that these deletions have been regularly occurring.   In addition, GECRB represents and warrants that, during the period set forth in the Agreement, it will, after the sale of charged off debt relating to a Credit Card Account, request that the Credit Reporting Agencies delete or suppress the GECRB Tradeline for that account after information about the sale is furnished.   As such, the Settlement offers substantial non-monetary relief to the class, as well, which increases the total value of the Settlement against which Class Counsel's request for fees should be evaluated.   *Fleisher*, 2015 WL 10847814, at *10-*11 & n.7 and 8.   Although it is difficult to place a precise dollar value on the non-monetary aspect of the Settlement, it is surely of significant value and thus further reduces the percentage of the Settlement represented by Class Counsel's fees to below 33%.[9]

--------

[9] For illustration purposes, even if one were to assume that the non-monetary relief had a *de minimis* monetary value of $1 per Class Member, applying that value to the estimated 616,000 Class Members would result in an additional $616,000 in the monetary value of the Settlement.

Application of the lodestar method confirms the reasonableness of Class Counsel's request. The lodestar, or the presumptively reasonable fee, is comprised of the number of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). Courts then adjust that lodestar figure (typically by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the results obtained, and the quality of the attorneys' work. *See, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973).

Class Counsel collectively expended more than 2,583 hours of professional time in connection with this class action on a fully contingent fee basis. *See* Shaw Decl. at ¶ 13; Juntikka Decl. at ¶ 2. Class Counsel's total lodestar, derived by multiplying these hours by each firm's current hourly rates for its attorneys and professional staff amounts to $1,927,180.00.[10] *See* Shaw Decl. at ¶ 14; Juntikka Decl. at ¶ 3. Thus, Class Counsel's request of a fee award of $1,939,949.02 is equal to 1.01 times its lodestar.[11] Given that courts frequently award fees equal to a multiple of Plaintiffs' Counsel's lodestar in complex class actions, the fee Class Counsel requests here is clearly reasonable. *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 123 (multiplier of 3.5 times

---

In this scenario, the requested fee award would be an even lower percentage of the total recovery in the case—31.5%. Of course, as noted above, the true value of the non-monetary relief is much higher.

[10] The Supreme Court has approved the use of current hourly rates to compensate for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163-64 (S.D.N.Y. 1989) (citing cases); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 n.25 (S.D.N.Y. 1998).

[11] Class Counsel will also spend additional time assisting with the administration of the Settlement, for which they will not seek an additional award of fees.

lodestar of $62,940,045.84 held reasonable); *Bisys,* 2007 WL 2049726, at *3 ("The reasonableness of the 30% [fee] is also confirmed by the resultant lodestar multiplier of 2.99 . . . . Such a multiplier falls well within the parameters set in this district and elsewhere.") (citations omitted); *Fleisher*, 2015 WL 10847814 at *18 ("Courts regularly award lodestar multipliers from 2 to 6 times lodestar in this Circuit") (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623–24 (S.D.N.Y. 2012)); *In re Converse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354, at *5 (E.D.N.Y. J u n e  2 4 ,  2010) (awarding 2.78 times lodestar, noting that "[w]here … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar"); *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03-md-1529, 2006 WL 3378705, at *2-3 (S.D.N.Y. Nov. 16, 2009), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) (awarding multiplier of 2.89 times lodestar of $33,686,468); *WorldCom*, 388 F. Supp. 2d at 354 (awarding multiplier of 4 times lodestar of $83,183,238.70); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding multiplier of 3.97 times lodestar of $36,191,751, noting that multipliers between 3 and 4.5 are common).

In addition, the fact that GECRB does not oppose this request signals its reasonableness. Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("The agreement by a settling party not to oppose a fee application up to a certain amount, for example, is worthy of consideration . . ."); *Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ("[W]here ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.").

Additionally, the hourly rates used in calculating Class Counsel's lodestar are reasonable. Pursuant to the "forum rule," reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits. *Simmons v. NY. City Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 190-91; *Olsen v. County of Nassau*, No. 05-cv-3623, 2010 WL 376642, at *3 (E.D.N.Y. Jan. 26, 2010). Class Counsel's hourly rates range from $350 to $1100 for attorneys. *See* Shaw Decl. at ¶ 15. These rates are in line with those charged by firms practicing in New York City on both sides of the caption in complex class actions, and with the hourly rates that have been applied under the lodestar method in other recent cases. Indeed, in the *Echevarria, Haynes*, and *Anderson* actions, courts within this district recently approved Class Counsel's fees using these same hourly rates. *See also, e.g.*, *National Law Journal* survey of law firm billing rates in 2014 (listing a number of law firms in New York City and other major metropolitan areas with billing rates comparable to or higher than Class Counsel's)[12]; *Fleisher*, WL 10847814 at *18 & n.15 (approving of Class Counsel's rates and citing the NLJ 2012 rate survey, stating "The National Law Journal survey for 2012 shows that partners at New York firms charge between $330 to $1200 and associates range between $215 to $760."); *see also Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("partner billing rates in excess of $1,000 an hour are by now not uncommon in the context of complex commercial litigation").

**B.    The Proposed Award to Class Counsel is Reasonable Under the *Goldberger* Criteria.**

---

[12] Available at https://www.law.com/nationallawjournal/almID/1202636785489/ (last visited on Jan. 27, 2022).

As noted above, the Second Circuit has stated that whether the Court uses the percentage method or the lodestar approach, it should continue to consider the following traditional criteria: (1) the time and labor expended by counsel; (2) the risks of the litigation; (3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. "In applying these criteria, a Court essentially makes . . . a qualitative assessment of a fair legal fee under all the circumstances of the case." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) (citation and internal quotation omitted). An analysis of these factors further demonstrates that Class Counsel's fee request is reasonable.

### 1.    The Time and Labor Expended By Class Counsel.

The many hours expended by Class Counsel, which resulted in the highly favorable Settlement, are plainly reasonable in view of the work performed in this complex litigation. With respect to discovery, Class Counsel conducted a thorough pre-suit investigation and evaluation of the relevant claims and defenses. Shaw Decl. at ¶ 3. Moreover, they have briefed a number of contested issues to the Bankruptcy Court, and litigated multiple appeals of contested issues. *Id*.

In addition, the terms of the Settlement Agreement were negotiated through extensive meetings and discussions over the course of months. *See* Shaw Decl. at ¶ 4. These negotiations included face-to-face sessions as well as numerous telephone and email discussions. Moreover, the parties' face-to-face negotiations took place both with an experienced and highly regarded mediator, as well as with the Honorable Robert Drain, the judge presiding over the matter in the Bankruptcy Court. *Id*. at ¶ 5.

The significant time and effort devoted to this case by Class Counsel, and their commitment to the efficient management of the litigation, support approval of the requested award.

> ## 2.      The Risks of the Litigation.

An evaluation of the risks undertaken by Class Counsel in prosecuting this action also supports the reasonableness of their fee request.  The Second Circuit has recognized that "despite the most vigorous and competent of efforts, success is never guaranteed." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).  "Contingency risk is the principal, though not exclusive, factor courts should consider in their determination of attorneys fees." *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318, 2001 WL 709262, at *6 (S.D.NY. June 22, 2001).  "It is well-established that litigation risk must be measured as of when the case is filed," not when the fee application is adjudicated.  *Goldberger*, 209 F.3d at 55.

With respect to the merits of the action, GECRB continues to deny liability and, absent settlement, it would no doubt continue to vigorously oppose Plaintiff's action, as it has done every step of the way to date.  As such, continued litigation presents the likelihood of significantly increased costs, with no guarantee for recovery, let alone a recovery greater than that which the Settlement provides.  *See, e.g.*, *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862, at *4 (E.D.N.Y Feb. 18, 2011) ("Litigation inherently involves risks.") (citation omitted); *Banyai v. Mazur*, No. 00 CIV 9806, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) ("[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."); *Zeltser v. Merrill Lynch & Co., Inc.*, No. 13 Civ. 1531, 2014 WL 4816134, at *6 (S.D.N.Y. Sept. 23, 2014).

Moreover, GECRB would no doubt vigorously oppose class certification.  Moreover, certified classes are subject to modification based on further developments in the litigation.  As such, additional challenges to proceeding on a class-wide basis present a risk to the class and its potential recovery.  *See, e.g.*, *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5 (E.D.N.Y. Aug. 7, 1998); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (a settlement that is reached prior to the risks of class certification, summary judgment, and trial, is evaluated more leniently in light of the risks it avoids).

It is also important that Class Counsel undertook this case on a wholly contingent fee basis, knowing the litigation could last for years and would require the expenditure of thousands of attorney hours, as well as thousands of dollars in expenses, with no guarantee of compensation. Prior to the filing of this case, Class Counsel undertook the time and effort to review literally thousands of credit reports of discharged debtors in their pre-litigation investigation to determine whether the alleged errors in the credit reports were sporadic and random or whether they were the result of a policy on the part of GECRB.  "In numerous class actions . . . plaintiffs' counsel have expended thousands of hours and advanced significant out-of-pocket expenses and received no remuneration whatsoever."  *Marsh & McLennan*, 2009 WL 5178546 at *18 (citing examples of cases dismissed).  While Class Counsel committed significant resources to the vigorous prosecution of this litigation over more than seven years, Class Counsel has not yet received any compensation.  "Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."  *Prudential*, 985 F. Supp. at 417.

Despite all of the risks assumed by Class Counsel, only a very modest premium is being sought to compensate them for those risks. This request is inherently reasonable when considered in light of the risks undertaken.

### 3. The Magnitude and Complexity of the Litigation.

The requested fee award is also reasonable in light of the magnitude and complexity of the litigation. The procedural history outlined above demonstrates that this litigation is, by its nature, complex. Moreover, it has already gone on for more than seven years, at significant expense to the parties. If the Settlement is not approved, further litigation would resume, which would be yet more costly, complex, and time-consuming. This litigation would likely include class certification proceedings, fact discovery, including depositions, interrogatories, and requests for admission, and more voluminous document discovery, expert discovery, dispositive motion practice, and trial. In addition, post-judgment appeals are also possible. This litigation has been and would continue to be complex, costly, and time-consuming and it would require significant judicial oversight.

### 4. The Requested Fee in Relation to the Settlement.

In *Dupler v. Costco Wholesale Corp.*, the court held that "the fact that the requested fee is comparable to fees that courts have found reasonable . . . weighs in favor of the fee's reasonableness." 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010). As discussed above, the proposed award represents approximately 34.9% of the monetary value of the Settlement based on the number of claims submitted to date, and less than 33% of the overall value of the Settlement. This amount is comparable to the fees awarded by courts in this Circuit in similarly-sized class actions *(see supra* pp. 11-12).

### 5. The Quality of the Representation.

The quality of the representation and the standing of Class Counsel also support the reasonableness of the requested fee. "[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D. S.C. 1987). The Bankruptcy Court preliminarily appointed Boies Schiller Flexner LLP and Charles Juntikka & Associates LLP Class Counsel based on their qualifications and experience and work on behalf the proposed Settlement Class. *See Belton v. GE Capital Consumer Lending, Inc.*, Adv. Pro. No. 14-08223 (RDD), Dkt. No. 137. Class Counsel has experience in both complex class action litigation and bankruptcy law and have efficiently prosecuted this action on behalf of the proposed Class. Shaw Decl. at ¶¶ 7-12.

The high quality of the opposition that Class Counsel faced is a further testament to the quality of counsel's representation. GECRB is represented by skilled and highly regarded counsel from a prestigious firm with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases. Courts have repeatedly recognized that the caliber of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance, and in this case it supports approval of the requested fee. *See, e.g.*, *Marsh & McLennan*, 2009 WL 5178546 at *19 (finding that reasonableness of fee was supported by the fact that defendants "were represented by first-rate attorneys who vigorously contested Lead Plaintiffs' claims and allegations"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement.").

6.     **Public Policy Considerations.**

Strong public policy supports rewarding counsel for bringing successful consumer protection litigation.  *See, e.g.*, *WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-3400, 2010 WL 4537550, at *29 (S.D.N.Y. Nov. 8, 2010) (holding that if the "important public policy [of enforcing consumer protection laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley v. Del. Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("In considering an award of attorney's fees, the public policy of vigorously enforcing [consumer protection] laws must be considered.").  Approval of the requested fees and expenses would be fully consistent with these important public policy considerations.

* * *

Thus, as described above, Class Counsel's requested fees are reasonable under each of the percentage of common fund, lodestar, and *Goldberger* analyses.

## II.    Class Counsel's Expenses Are Reasonable and Appropriate.

Plaintiffs' Counsel also request reimbursement of all litigation costs and expenses incurred during this litigation, which currently total $60,050.98 ($59,576.44 incurred by Boies Schiller Flexner and $474.54 incurred by Charles Juntikka & Associates).  These relatively modest expenses were reasonable and necessary in this litigation, and have been expended for the direct benefit of the Class.  *See* Shaw Decl. at ¶ 16; Juntikka Decl. at ¶ 4.  "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."  *In re Arakis Energy Corp. Sec. Litig.*, 3431C, 2001 WL 1590512, at *17 n.12

(E.D.N.Y. Oct. 31, 2001); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525 (E.D.N.Y. 2003) (noting that it is common practice to grant expense request and awarding millions in expenses where the "lion's share of these expenses reflects the cost of experts and consultants, litigation and trial support services, document imaging and copying, deposition costs, on-line legal research, and travel expenses."); *In re Vitamins Antitrust Litig.*, No. 99-197, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *69 (D. D.C. July 16, 2001) ("[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund . . . . Courts have routinely awarded expenses for which counsel would normally directly bill their clients.").

## III.   The Proposed Incentive Award to the Class Representative is Reasonable and Appropriate.

Providing incentive awards to consumers who come forward to represent a class is a necessary and important component of any class action settlement. *See Viafara v. MCIZ Corp.*, No. 12 7452, 2014 WL 1777438, at *16 (S.D.N.Y. May 1, 2014) ("Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time they spend and the risks they take. The Court finds reasonable service awards of $12,500 to Viafara for the MCIZ Settlement and $12,500 for the JAD Settlement.") (citations omitted); *Elliot v. Leatherstocking Corp.*, No. 10-0934, 2012 WL 6024572, at *7 (N.D.N.Y. Dec. 4, 2012) ("Service awards are common in class action cases and are important to compensate a plaintiff for the time and effort expended in assisting in the prosecution of the litigation.").

Class Counsel requests that the Court approve the payment of an incentive award to Plaintiff in the amount of $10,000 in recognition of her efforts on behalf of the Class. The

requested payment is well deserved and falls well within the range of incentive awards approved in prior cases. *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (citing *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001)) (noting case law supports payments of between $2,500 and $85,000 to representative plaintiffs in class actions). Moreover, the incentive award request was subject to arm's length negotiations between the parties and was adequately disclosed in advance to the Class and has not been objected to. Plaintiff has conferred with Class Counsel regarding the status of the case and the settlement negotiations, among other things, and represented well the interests of the absent class members. Shaw Decl. at ¶ 17. Plaintiff's participation was substantial and indispensable.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the request for attorney's fees and costs and incentive award in the amounts indicated.

Respectfully submitted,

Dated: Albany, New York
January 27, 2022

**BOIES SCHILLER FLEXNER LLP**

By:  */s/Adam R. Shaw*
George F. Carpinello
Adam R. Shaw
Anne M. Nardacci
30 South Pearl Street
Albany, NY  12207
(518) 434-0600

**CHARLES JUNTIKKA & ASSOCIATES LLP**
Charles Juntikka
30 Vesey Street, #100
New York, NY  10007
(212) 315-3755

*Attorneys for Plaintiff Nyree Belton*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2022, I caused the foregoing document to be filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.


                                         */s/Adam R. Shaw*　　　　　
                                         Adam R. Shaw